James W. Sweeney vs. United Electric Railways Company } No. 56137

July 27, 1928.

SUMNER, J. Plaintiff brought suit to recover damages for injuries claimed to be due to the negligence of the motorman of the defendant. The jury returned a verdict for the plaintiff in the sum of $14,750 and the defendant has filed its motion for a new trial on the usual grounds.

The plaintiff was living in a North Main Street rooming house at the corner of Cady Street at the time of the accident. His testimony was substantially as follows: he had been to a restaurant on the west side of North Main Street and left the restaurant to return to the east side of the street. When he started to recross the street, he saw a car of the defendant stopped near Metzger's drugstore (some 300 feet away to the north). Later, when he was a step or two from the inbound rails, he saw the car at Try Street (about 191 feet away). About the time he got over the inbound track, he heard an automobile coming from the south on the outbound track and stopped between the two sets of tracks. When

the automobile passed, he moved and something hit him.

Plaintiff presented two witnesses, Joseph Martin and Frederick Hackett, who testified in corroboration. Martin's story was as follows: he was waiting at a fourth story window of the rooming house for a lady friend to get off the car at the drugstore; that he saw Sweeney come out of the restaurant; that when Sweeney stepped between the car tracks, the car was about three posts away (about 300 feet); that Sweeney stood between the tracks two or three seconds before he was hit, waiting for an automobile to pass; that the car was going very fast, 20 to 25 miles an hour, and the motorman did not apply the brakes till after the accident; that the motorman told him that he was late making up lost time and that he thought he could clear the plaintiff but did not; that the motorman seemed to be looking ahead at Sweeney. The inference from his testimony and that of the witness Hackett is that Sweeney was in plain sight of the motorman while he stood between the tracks and that the motorman misjudged the distance he was from the tracks.

Hackett's story is that he observed the accident as he stood in a doorway on the east side of North Main Street almost opposite the restaurant; that the car "was mostly down to Bowen Street" or at Bowen Street when Sweeney was in the middle of the road (that would be 110 feet away). At another time he said the car was 50 feet away, at another time one or one and one-half car lengths away, when Sweeney stopped between the tracks; that Sweeney stood 4 or 5 seconds in the middle of the street before he was struck. Hackett, at the time of the accident, was doing housework and running a furnace and at the time of the trial was employed in a restaurant.

The conductor and the motorman for the defendant testified that Sweeney tried to cross the inbound track at a time when the trolley car was too near to be stopped and that the motorman acted promptly in his efforts to stop the car. The defendant also offered the testimony of two occupants of the car, Mrs. Ferrier and Mr. Lackey, who saw the accident, and also that of Mr. Hayward who got statements from the witnesses. Mrs. Ferrier, at the time of the accident, was a girl 15 years and 5 months old and unusually short in stature. She told a reasonable and consistent story notwithstanding the unnecessarily sharp examination of plaintiff's attorney. Both she and Mr. Lackey were convincing witnesses. Mr. Hayward, an investigator for the defendant, testified to taking statements from Martin and Hackett shortly after the accident, which statements substantially agree with the testimony of the witnesses for the defendant. Martin signed his statement by a mark and swore to it, although he attempted to deny it at the trial. The statement purported to be made by Hackett was not signed. He testified at the trial that he was too busy to read it.

There is a serious question in the mind of the Court as to whether a fair construction of the testimony of the plaintiff's witnesses does not show contributory negligence on the part of the plaintiff. The motorman's and conductor's testimony was perhaps biased but it was strongly buttressed by the testimony of Mrs. Ferrier and Mr. Lackey, and also by Mr. Hayward relative to the statements made to him. Martin's testimony relative to the statement was contradictory. He said that Hayward did not write anything down or have any paper and that he did not swear to it. Later, under the examination of his own attorney, he admitted that he did swear "to some of it"—"what had happened"—and it appeared that at a former trial he ad-

mitted that the paper was read to him and he swore to it.

Neither the appearance nor type of Sweeney and his two witnesses commended their testimony to the Court. Their stories were not reasonable and on important items they were contradictory.

The defendant's motion for a new trial is granted.

For plaintiff: W. S. Flynn and E. W. Flynn.

For defendant: Clifford Whipple.